Matthew I. Knepper, Esq.
Nevada Bar No. 12796
Miles N. Clark, Esq.
Nevada Bar No. 13848
KNEPPER & CLARK LLC
5510 So. Fort Apache Rd, Suite 30
Las Vegas, NV 89148
Phone: (702) 856-7430
Fax: (702) 447-8048
Email: matthew.knepper@knepperclark.com
Email: miles.clark@knepperclark.com

David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Ave., Suite 350
Las Vegas, NV 89123
Phone: (702) 880-5554
Fax: (702) 385-5518
Email: dkrieger@hainesandkrieger.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| PEGGY PRUCHNICKI,<br><br>                    Plaintiffs,<br><br>vs.<br><br>ENVISION HEALTHCARE CORPORATION d/b/a ENVISION HEALTHCARE; EMCARE, INC.; and SHERIDAN HEALTHCORP, INC.,<br><br>                    Defendants. | Case No.: 2:19-cv-01193-JCM-BNW<br><br>**[PROPOSED] SECOND AMENDED CLASS ACTION COMPLAINT JURY TRIAL DEMANDED**<br><br>**[JURY TRIAL DEMANDED]** |

## JURISDICTION AND VENUE

1.    This action arises out of violations of Nevada common law, NRS 598, and NRS 41.600,

and as appropriate, the law of other states by Envision Healthcare Corporation d/b/a

Envision Healthcare Services ("Envision"), EmCare, Inc. ("EmCare"), and Sheridan

Healthcorp, Inc. ("Sheridan").

2.       This Court has jurisdiction pursuant to 28 U.S.C § 1332(d)(2) because (1) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, (2) Plaintiff is a citizen of a different state than Defendants.

3.       Venue is proper in the unofficial Southern District of the U.S. District Court for the District of Nevada because Plaintiff is a resident of the County of Clark, State of Nevada and because Defendant is subject to personal jurisdiction in Nevada as it conducts business there. Venue is also proper in the unofficial Southern District of Nevada because much of the conduct giving rise to this action occurred in Nevada.

## PARTIES

4.       Plaintiff Peggy Pruchnicki ("Plaintiff") is a natural person residing in the County of Clark, State of Nevada.  Plaintiff was a victim of the Data Breach, as described below.

5.       Plaintiff and all putative members of Classes 1-4 and Nevada Subclasses 1-4 are individual persons.  Additionally, Plaintiff and members of the Nevada Subclasses 1-4 are "persons" as used in NRS 598, and NRS 41.600.

6.       Envision is presently a wholly owned indirect subsidiary of Enterprise Parent Holdings Inc.  As reflected in the Agreement and Plan of Merger by and among Enterprise Parent Holdings, Inc., Enterprise Merger Sub Inc., and Envision, dated June 10, 2018, Envision continues its corporate existence under Delaware law as the Surviving Corporation, as defined by the Agreement and Plan of Merger, as an indirect wholly owned subsidiary of Enterprise Parent Holdings Inc.  Prior to the merger, and at all times relevant to this action, Envision was a Delaware for-profit corporate whose principal place of business was in Greenwood Village, Colorado.  Envision is a provider of emergency medical services and

facility-based physician services throughout the United States, including within the State of Nevada.  Envision is a "person" as used in NRS 598 and NRS 41.600.

7.    EmCare is an affiliate company of Envision, and is a Delaware corporation with a principal place of business in Greenwood Village, Colorado, which does business in the State of Nevada.  EmCare is a "person" as used in NRS 598 and NRS 41.600.

8.    Sheridan is an affiliate company of Envision, and is a Florida corporation which on information and belief does business in the State of Nevada.  Sheridan is a "person" as used in NRS 598 and NRS 41.600.

9.    Unless otherwise indicated, the use of Envision's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Envision, as well as its affiliates.  Envision, EmCare, and Sheridan are collectively referred to as the "Envision Defendants" or "Defendants."

## **FACTUAL ALLEGATIONS**

10.    Plaintiff and all putative Class members formerly supplied their personal and/or financial data ("Personal Data") to Envision in connection with transactions with Envision.  Plaintiff contracted with

11.    In or about July 2018, Envision's systems were breached by an unidentified third party ("Data Breach").  The third party accessed several Envision email accounts, from which it procured Plaintiff and Class members' personal data, which included name, date of birth, social security number, driver's license number, and unidentified "financial information" (collectively, "Personal Data").

12.    Envision's data breach encompassed data from (1) current or former providers, employees,

and contractors with Envision or one of its affiliates, (2) individuals who had applied for a position with Envision, and (3) current and former patients of Envision. Envision informed Plaintiff that several of its email accounts had been breached.

13. However, Envision did not notify all affected parties of the Data Breach after it occurred. Instead, Envision waited until October 10, 2018 to notify Plaintiff by letter ("October 10 Letter").

14. In its October 10 Letter, Envision failed to specifically identify the types of information impacted in the Breach. Instead, the October 10 Letter to Plaintiff refers to "personal" and "financial information" that "may" have been impacted.

15. Therefore, Envision failed to promptly and adequately inform Plaintiff and Class members of the types of data which had been procured in the Data Breach to permit Plaintiff and Class members to take the appropriate steps to protect their data from fraud.

16. Thereafter, on October 18, 2018, Envision sent Plaintiff and over 100 other individuals an email which confirmed the fact of the Data Breach, but indicated that the Breach had not affected everyone ("October 18 Email"). However, Envision did not offer any more specificity on the specific types of Personal Data impacted in the Data Breach at that time.

17. On April 20, 2019, Plaintiff received an email from Envision which indicated Envision's intent to announce the data beach to the news media. Therein, Envision stated that the data breach had affected not only current and former employees and contractors, but also patients, and the information stolen included names, ages, dates of birth, as well as driver's license numbers, social security numbers, and patient clinical information in some instances. However, at that time Envision never informed Plaintiff that her data was included in the breach.

18.    On April 20, 2019, EmCare "and its affiliates" announced that they were "assessing a data security incident that involved the personal information of some patients, employees, and contractors."[1]  This notification indicated that "For the subset of patients and employees whose Social Security or driver's license numbers were impacted, EmCare has arranged for identity protection and credit monitoring services."[2]

19.    On April 24, 2019, news media reported that a data breach of records from EmCare, a branch of Envision, had impacted as many as 60,000 individuals – including over 30,000 patients.[3]

20.    On May 3, 2019, a letter was sent to Plaintiff from EmCare ("May 3 Letter").  Therein, EmCare stated that "Based on our records, you may currently be, or may have previously been, employed by or engaged with EmCare . . . Sheridan . . . or one of their affiliates." The May 3 letter explained that EmCare "recently became aware that an unauthorized third party obtained access to a number of EmCare Employees' e-mail accounts," and "[o]n February 19, 2019, we determined that the accounts contained some of your personal information including your name and Social Security number."

21.    Envision has long had problems with its data security.  In February 2015, the media

---

[1] EmCare, *EmCare Sends Notification of Data Security Incident*, Cision PR Newswire, available at https://www.prnewswire.com/news-releases/emcare-sends-notification-of-data-security-incident-300835378.html (last visited May 19, 2019).

[2] *Id.*

[3] Angie Stewart, *Envision's EmCare Branch Hit by Hack Affecting Up to 60,000 Individuals*, Becker's ASC Review, available at https://www.beckersasc.com/asc-turnarounds-ideas-to-improve-performance/envision-s-emcare-branch-hit-by-hack-affecting-up-to-60-000-individuals-4-insights.html (last visited May 19, 2019).

reported that a class action against Envision had been filed after an alleged "insider" breach of over 82,000 individual records which went on for approximately two years. In response, a third party website informed the public that Envision "will implement whatever steps are necessary to mitigate and prevent future occurrences" of the breach of its internal records.[4] Therefore, Defendants were not only aware of their obligation to safeguard information, but also their obligation to impose remedial measures to prevent future data breaches.

22.    In fact, the Envision Defendants' failure to promptly notify Plaintiff and Class members of the Data Breach, which began in July 2018, may have stemmed from the Envision Defendants' independent business motives. Specifically, at or around the period during which the Envision Defendants' systems were compromised, Envision was finalizing a merger with Enterprise Parent Holdings, Inc. ("Enterprise"), by which Envision became a wholly-owned subsidiary of Enterprise. Through this transaction, KKR acquired Envision.

23.    The Envision Defendants' delay in failing to notify Plaintiff and Class members of the Data Breach may have stemmed in part from its desire not to disrupt merger negotiations by acknowledging the fact of the Data Breach, at the expense of the victims of the Data Breach.[5] Instead, the Envision Defendants waited months to inform Plaintiff and Class

---

[4]    OU Health, *Envision Rx HIPAA Breach Update*, available at https://www.ouhealth.org/newslisting/envision-rxx-hipaa-breach-update/ (last visited Aug. 12, 2019).

[5]    *See* Envision Healthcare, Form 8-K, available at https://www.sec.gov/Archives/edgar/data/1678531/000119312518297466/d637722d8k.htm (last visited Jan. 2, 2019); *see also* Media Page, KKR Acquires Envision, available at https://media.kkr.com/news-releases/news-release-details/kkr-completes-acquisition-envision-healthcare-corporation (last visited Aug. 12, 2019) ("KKR Acquires Envision").

[PROPOSED] SECOND AMENDED CLASS ACTION COMPLAINT JURY TRIAL DEMANDED [JURY TRIAL DEMANDED] - 6

members of the prospect of the breach, then waited several more months before it notified

Plaintiff that her private data had actually been included in the breach.  In fact, on day after

Envision sent Plaintiff its October 10 letter, it announced completion of its acquisition by

KKR.[6]

24.    By failing to timely notify individuals of the fact of the Data Breach, the Envision

Defendants deprived Plaintiff and Class members of an opportunity to swiftly and

comprehensively protect their credit from the effects of identity theft.

25.    Plaintiff, individually and on behalf of those similarly situated, brings this action to

challenge the actions of the Envision Defendants in the protection and safekeeping of the

Plaintiff's and Class members' personal information.  The Envision Defendants' collective

failure to safeguard consumer PII has caused Plaintiff and Class members damages.

26.    Specifically, the injuries suffered by Plaintiff and Class members include, but are not

limited to:

    a.    Lost time in attempting to mitigate the effects of the Data Breach.  For example,

since being notified of the Data Breach Plaintiff has been obligated to spend time

procuring her consumer disclosures from several credit reporting agencies and

investigating the content for allegedly fraudulent activity.  Additionally, Plaintiff

was obligated to obtain a new payment card from Bank of America in January 2019

and a credit card from American Express in May 2019, to ensure that the accounts

she used were free of unexpected charges.  Since being notified of the Data Breach,

---

[6] *See* KKR Acquires Envision.

[PROPOSED] SECOND AMENDED CLASS ACTION COMPLAINT JURY TRIAL DEMANDED [JURY TRIAL DEMANDED] - 7

Plaintiff also spends approximately half an hour each week reviewing her financial accounts for transactions which may have been fraudulent. Plaintiff has received an increased volume of "spam" phone calls, which she attributes to the data breach, also causing her to lose time. As a nurse practitioner and a small business owner, Plaintiff's time is as limited as it is valuable, and the steps she has taken in light of the Data Breach represents lost time she would not have spent but for the Data Breach, and which she could have spent earning her livelihood or engaging in personal activities.

b. The stress, nuisance, and annoyance of dealing with issues resulting from the Data Breach. In particular, in addition to the items listed above, Plaintiff has suffered from worry, anxiety, and hesitation, particularly in applying for new credit cards. Moreover, as a small business owner, Plaintiff is concerned that damage to her creditworthiness could impact her ability to obtain credit for her business.

c. The imminent and certainly impending injury flowing from potential fraud and identity theft posed by their Personal Data being placed in the hands of unauthorized third parties who will or are likely to misuse that data.

d. Damages to and diminution in value of their personal and financial information entrusted to the Envision Defendants in connection with business transactions with them and with the mutual understanding that they would safeguard Plaintiff's and Class members' data against theft and not allow access to and misuse of their information by others.

e. Continued risk to their Personal Data, which remains in the possession of Envision and which is subject to further breaches so long as the Envision Defendants

continue to fail to undertake appropriate and adequate measures to protect Plaintiff's and Class members' data in its possession.

27. Plaintiffs' and Class members' damages can be assessed by recourse to common and accepted economic models of proof, such as a model based on a loss of quality of life or a willingness to pay to secure their personal information.

28. A study by the Identity Theft Resource Center show the multitude of harms caused by fraudulent use of personal information:



Source: "Credit Card and ID Theft Statistics" by Jason Steele, 10/24/17, at: https://www.creditcards.com/credit-card-news/credit-card-security-id-theft-fraud-

statistics-1276.php. Plaintiff and the Class have experienced one or more of these harms as a result of the data breach.

29.    The damage to Plaintiff's creditworthiness and injury due to prospective fraud is likely to continue for a significant period of time.  This is because there is often a time delay between when harm occurs versus when it is discovered, and also between when personal information or Personal Data is stolen and when it is used. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

"Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown" by GAO, June 2007, at: https://www.gao.gov/assets/270/262904.html.

30.    There is a strong probability that entire batches of stolen information have yet to be circulated on the black market, meaning the Envision Defendants' customers, as well as current and former employees or job seekers, could be at risk of fraud and identity theft for years into the future.

31.    Plaintiff and members of the classes defined below have or will suffer actual injury as a direct result of the Envision Defendants' data breach. In addition to fraudulent charges and damage to their credit, many victims spent substantial time and expense relating to:

    a.    Finding fraudulent charges;

    b.    reviewing their credit reports for potentially fraudulent transactions, and placing security freezes on their credit reports; and

c.      Obtaining monitoring and identity theft prevention.

32.    As a direct and proximate result of the Envision Defendants' conduct, Plaintiff and the Class have been placed at an imminent, immediate, and continuing increased risk of harm from fraud and identity theft. Plaintiff and Members of the Class now have to take the time and effort to mitigate the actual and potential impact of the data breach on their everyday lives, which will include closely reviewing and monitoring bank accounts and credit reports for unauthorized activity for years to come. Moreover, Plaintiff and the Class have an interest in ensuring that their information, which remains in the possession of the Envision Defendants is protected from further breaches by the implementation of security measures and safeguards.

33.    Plaintiff and the Class have suffered, and continue to suffer, economic damages and other actual harm for which they are entitled to compensation, including:

a.      Trespass, damage to and theft of their personal property including their Personal Data;

b.      Improper disclosure of their Personal Data;

c.      The imminent and certainly impending injury flowing from potential fraud and identity theft posed by their Personal Data having been placed in the hands of criminals and having been already misused via the sale of such information on the Internet black market;

d.      Damages flowing from the Envision Defendants' untimely and inadequate notification of the data breach;

e.      Loss of privacy suffered as a result of the data breach;

f.      Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the data breach; and

g.      Ascertainable losses in the form of deprivation of the value of Plaintiff's Personal Data for which there is a well-established and quantifiable national and international market.

[PROPOSED] SECOND AMENDED CLASS ACTION COMPLAINT JURY TRIAL DEMANDED [JURY TRIAL DEMANDED] - 11

## CLASS ALLEGATIONS

### NATIONWIDE CLASSES

34.    Pursuant to NRCP 23(c)(1), (c)(2), and (c)(3), Plaintiff assert common law claims for negligence (Count I), breach of implied contract (Count II), and negligent misrepresentation (Count III) on behalf of nationwide class, each defined as follows:

> All persons whose Personal Data was procured by a third party as a result of the Data Breach due to the Envision Defendants' failure to secure its internal systems of record.

35.    Excluded from the Classes are Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Classes is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

### NEVADA STATE CLASSES

36.    Alternatively, pursuant to Pursuant to NRCP 23(c)(1), (c)(2), and (c)(3), Plaintiff and Nevada Subclass members assert common law claims for negligence (Count I), breach of implied contract (Count II), and negligent misrepresentation (Count III), on behalf of a Nevada Subclass, each defined as follows:

> All residents of the State of Nevada whose Personal Data was procured by a third party as a result of the Data Breach due to the Envision Defendants' failure to secure its internal systems of record.

37.    Excluded from the Classes are Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Classes is any judge, justice, or judicial

officer presiding over this matter and the members of their immediate families and judicial staff.

38. Additionally, pursuant to Pursuant to NRCP 23(c)(1), (c)(2), and (c)(3), Plaintiff and Nevada Subclass members allege of the Nevada Deceptive Trade Practices Act (Count IV) on behalf of Nevada Plaintiff, defined as follows:

> All residents of the State of Nevada whose Personal Data was procured by a third party as a result of the Data Breach due to the Envision Defendants' failure to secure its internal systems of record.

39. Excluded from the Classes are Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Classes is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

## CERTIFICATION OF THE PROPOSED CLASSES IS APPROPRIATE

40. Each of the proposed Classes meets the requirements of Pursuant to NRCP 23(a).

41. Numerosity: The October 18 Email demonstrates that over 100 persons received notification that their data maty have been compromised in the Data Breach, and subsequent public disclosures indicate that tens of thousands of other individuals were also impacted. Therefore, it is reasonable to believe that hundreds of individuals' Personal Data was compromised in the Envision Data breach.

42. Commonality and Predominance: There are many questions of law and fact common to the claims of Plaintiff and the other members of the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include:

a.    Whether Defendants failed to adequately safeguard Plaintiff's and the Classes' Personal Information;

b.    Whether Defendants' computer systems and data security practices used to protect Plaintiff's and the Classes' Personal Information violated federal, state and local laws, or Defendants' duties;

c.    Whether Defendants engaged in unfair, unlawful, or deceptive practices by failing to safeguard Plaintiff's and the Classes' Personal Information properly and/or as promised;

d.    Whether Defendants violated the consumer protection statutes and data breach notification statutes applicable to Plaintiff and each of the Classes;

e.    Whether Defendants failed to notify Plaintiff and members of the Classes about the Envision Data Breach as soon as practical and without delay after the Envision Data Breach was discovered;

f.    Whether Defendants acted negligently in failing to safeguard Plaintiff's and the Classes' Personal Information;

g.    Whether Defendants entered into implied contracts with Plaintiff and the members of the each of the Classes that included contract terms requiring Defendants to protect the confidentiality of Plaintiff's Personal Information and have reasonable security measures;

h.    Whether Defendants' conduct described herein constitutes a breach of their implied contracts with Plaintiff and the members of each of the Classes;

i.    Whether Plaintiff and the members of the Classes are entitled to damages as a result of Defendants' wrongful conduct;

j.    What equitable relief is appropriate to redress Defendants' wrongful conduct; and

k.    What injunctive relief is appropriate to redress the imminent and currently ongoing harm faced by members of the Classes.

43.    Typicality: Plaintiff's claims are typical of the claims of the members of the Classes. Plaintiff and the members of the Classes sustained damages as a result of Defendant's uniform wrongful conduct in failing to adequately protect Plaintiff and Class members' data, and in failing to properly notify them of the Data Breach.

44. Adequacy: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and have retained counsel competent and experienced in complex litigation and class actions. Plaintiff have no interests antagonistic to those of the Classes, and there are no defenses unique to Plaintiff. Plaintiff and their counsel are committed to prosecuting this action vigorously on behalf of the members of the proposed Classes, and have the financial resources to do so. Neither Plaintiff nor their counsel have any interest adverse to those of the other members of the Classes.

45. Risks of Prosecuting Separate Actions: This case is appropriate for certification because prosecution of separate actions would risk either inconsistent adjudications which would establish incompatible standards of conduct for the Defendants or would be dispositive of the interests of members of the proposed Classes. Furthermore, the Class Members' Personal Data is still in Envision's control, and is still vulnerable to future attacks – one standard of conduct is needed to ensure the future safety of Envision's data storage environment.

46. Policies Generally Applicable to the Classes: This case is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Plaintiff and proposed Classes as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct towards members of the Classes, and making final injunctive relief appropriate with respect to the proposed Classes as a whole. Defendants' practices challenged herein apply to and affect the members of the Classes uniformly, and Plaintiff's challenge to those practices hinges on Defendants' conduct with respect to the proposed Classes as a whole, not on individual facts or law applicable only to Plaintiff.

47.     Superiority: This case is also appropriate for certification because class proceedings are superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and the members of the Classes. The injuries suffered by each individual member of the Classes are relatively small in comparison to the burden and expense of individual prosecution of the litigation necessitated by Defendants' conduct. Absent a class action, it would be virtually impossible for individual members of the Classes to obtain effective relief from Defendants. Even if members of the Classes could sustain individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties, including the Court, and would require duplicative consideration of the common legal and factual issues presented here. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single Court.

## CAUSES OF ACTION

### *Count I – Negligence*

48.     Plaintiff realleges, as if fully set forth, the allegations of the preceding paragraphs.

49.     Defendants solicited, gathered, and stored personal information, including Personal Data, of Plaintiff and the Nationwide Negligence Class or, alternative, the Separate Nevada Negligence Classes (collectively, the "Class" as used in this Count) to facilitate its business.

50.     Defendants owed duties of care to Plaintiff and the Class whose personal information was entrusted to it.  Defendants' duties included the following:

      a.       To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting and protecting personal information and Personal Data in its possession;

b.      To implement processes to quickly detect a data breach and to timely act on warnings about data breaches; and

c.      To promptly notify Plaintiff and Class members of the data breach.

51.     Envision had a special relationship with Plaintiff and the Class. Plaintiff's and the Class' willingness to entrust Defendants with their personal information was predicated on the understanding that Defendants would take adequate security precautions. Moreover, only Defendants had the ability to protect its systems (and the personal information that it stored on them) from attack.

52.     Defendants owed a duty of care not to subject Plaintiff and the Class to an unreasonable risk of harm because they were foreseeable and probable victims of any inadequate security practices.

53.     Defendants knew, or should have known, of the risks inherent in collecting and storing the personal information of Plaintiff and the Class and the importance of adequate security. Defendants were well aware of the fact that its systems and the Personal Data it stored were subject to compromise, as it had been sued in 2015 for its breach of over 82,000 persons' records.

54.     Because Defendants knew that a breach of its systems would potentially damage at least hundreds of individuals, including Plaintiff and Class members, they had a duty to adequately protect their personal information.

55.     Defendants knew, or should have known, that their computer systems did not adequately safeguard the personal information of Plaintiff and the Class.

[PROPOSED] SECOND AMENDED CLASS ACTION COMPLAINT JURY TRIAL DEMANDED [JURY TRIAL DEMANDED] - 17

56.  Defendants breached their duties of care by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard the personal information of Plaintiff and the Class.

57.  Defendants acted with reckless disregard for the security of the personal information of Plaintiff and the Class because they knew or should have known that their computer systems and data security practices were not adequate to safeguard the personal information that they collected and stored, which were compromised.

58.  Defendants also owed a duty of care to promptly notify Plaintiff and Class members after the Data Breach occurred in July 2018.

59.  Defendants acted with reckless disregard for the rights of Plaintiff and the Class by failing to provide prompt and adequate notice of the data breach so that they could take measures to protect themselves from damages caused by the fraudulent use of the personal information compromised in the data breach.  Indeed, Envision may have delayed notifying Plaintiff and Class members of the Data Breach in order to further its own interests in finalizing its acquisition by Kohlberg Kravis Roberts ("KKR").  Thus, Defendants breached their duties of care by failing to provide prompt notice of the data breach to the persons whose personal information was compromised.

60.  Even when notifying Plaintiff in October 2018, Defendant failed to explain what specific information had been exposed in the Data Breach, indicating only that her personal and financial information "may" have been included.

61.  Defendants' own conduct also created a foreseeable risk of harm to Plaintiff and Class members and their personal information. Defendants' misconduct included failing to secure their systems.

62.   On information and belief, Defendants use the same computer systems and security practices in all states in which they do business.

63.   Defendants breached their duties to Plaintiff and the Class under these states' laws by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and the Class' personal information.

64.   Defendants breached the duties they owed to Plaintiff and Class members in numerous ways, including:

     a.   By creating a foreseeable risk of harm through the misconduct previously described;

     b.   By failing to implement adequate security systems, protocols and practices sufficient to protect their personal information both before and after learning of the data breach; and

     c.   By failing to timely and accurately disclose that the personal information of Plaintiff and the Class had been improperly acquired or accessed.

65.   But for Defendants' wrongful and negligent breach of the duties they owed Plaintiff and the Class members, their Personal Data would not have been compromised or they would have been able to prevent some or all of their damages.

66.   As a direct and proximate result of Defendants' negligent conduct, Plaintiff and the Class have suffered damages and are at imminent risk of further harm.

67.   The injury and harm that Plaintiff and Class members suffered (as alleged above) was reasonably foreseeable.

68.   Additionally, according to state laws where Defendants operate, including but not limited to the laws of the State of Nevada (NRS 603A.210), Defendants also had independent duties that required them to reasonably safeguard Plaintiff's and the Class' personal information and promptly notify them about the data breach.

69. Federal law also prohibits Defendants' conduct. Specifically, Additionally, pursuant to the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45, Defendants had a duty to provide fair and adequate computer systems and data security to safeguard the personal information, including the Personal Data, of Plaintiff and the Nationwide Negligence Class. The FTCA has been held to cover nationwide data breaches.[7]

70. The FTCA prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Envision, of failing to use reasonable measures to protect personal information. The FTC publications and orders described above also formed part of the basis of Envision's duty in this regard.

71. Defendants solicited, gathered, and stored personal information, including Personal Data, of Plaintiff and the Class to facilitate business transactions which affect commerce.

72. Defendants violated the FTCA and NRS 603A by failing to use reasonable measures to protect personal information of Plaintiff and the Class and not complying with applicable industry standards, as described herein.

73. Plaintiff and the Class are within the class of persons that the FTCA and NRS 603A was intended to protect.

74. The harm that occurred as a result of the Data Breach is the type of harm the FTCA and NRS 603A were intended to guard against.

---

[7] *See In re Equifax, Inc. Customer Security Breach Litig.*, 362 F. Supp. 3d 1295, 1327 (N.D. Ga. 2019).

[PROPOSED] SECOND AMENDED CLASS ACTION COMPLAINT JURY TRIAL DEMANDED [JURY TRIAL DEMANDED] - 20

75. Consequently, Defendants' violation of the FTCA, NRS 603A, and any other state law designed to protect against inappropriate disclosure of electronic data, constitutes negligence *per se*.

76. The injury and harm that Plaintiff and Class members suffered (as alleged above) was the direct and proximate result of Defendants' negligent conduct. Defendants' violation of the FTCA, NRS 603A, The injury and harm that Plaintiff and Class members suffered (as alleged above) was the direct and proximate result of Envision's negligence and negligence *per se*.

77. As a direct and proximate result of Defendants' negligence, Plaintiff and the Class have or are expected to suffer, and continue to suffer, damages arising from false or fraudulent charges stemming from the data breach, including but not limited to late fees charges; damages from lost time and effort to mitigate the actual and potential impact of the data breach on their lives including, *inter alia*, closely reviewing and monitoring their accounts and credit reports for unauthorized activity which is certainly impending.

78. Plaintiff and the Class have suffered injury and are entitled to damages in an amount to be proven at trial.

79. Additionally, since the data breach, Defendants have announced no specific changes to their data security to fix the vulnerabilities in its systems which permitted the intrusions and to prevent further attacks.

80. Accordingly, Defendants still have not satisfied the duties of care owed to Plaintiff and the Negligence Classes. In fact, now that Defendants' lax approach towards information security has become public, the personal information in Defendants' possession is more vulnerable than previously.

81.  Actual harm has arisen in the wake of Defendants' data breach regarding its breaches of its duties of care to provide security measures to Plaintiff and the members of the Negligence Classes. Further, Plaintiff and the members of the Negligence Classes are at risk of additional or further harm due to the exposure of their personal information and Defendants' failure to address the security failings that lead to such exposure.

82.  There is no reason to believe that Defendants' security measures are any more adequate than they were before the breach to meet Defendants' contractual obligations and legal duties.

83.  Plaintiff, therefore, also seeks a declaration that Defendants' existing security measures do not comply with their duties of care to provide adequate security, and to properly comply with the same, Defendants must implement and maintain reasonable security measures, including, but not limited to:

   a.  Ordering that Defendants engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendants' systems on a periodic basis, and ordering Defendants to promptly correct any problems or issues detected by such third-party security auditors;

   b.  Ordering that Defendants engage third-party security auditors and internal personnel to run automated security monitoring;

   c.  Ordering that Defendants audit, test, and train their security personnel regarding any new or modified procedures;

   d.  Ordering that Defendants segment customer data by, among other things, creating firewalls and access controls so that if one area of Defendants is compromised, hackers cannot gain access to other portions of Defendants' systems;

   e.  Ordering that Defendants purge, delete, and destroy in a reasonably secure manner customer data not necessary for their provisions of services;

   f.  Ordering that Defendants conduct regular database scanning and securing checks;

[PROPOSED] SECOND AMENDED CLASS ACTION COMPLAINT JURY TRIAL DEMANDED [JURY TRIAL DEMANDED] - 22

g. Ordering that Defendants routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

h. Ordering Defendants to meaningfully educate their customers about the threats they face as a result of the loss of their financial and personal information to third parties, as well as the steps Defendants customers must take to protect themselves.

### Count II – Breach of Implied Contract

84. Plaintiff realleges, as if fully set forth, the allegations of the preceding paragraphs.

85. When Plaintiff and the members of the Nationwide Class or, alternatively, the members of the Separate Nevada Breach of Implied Contract Classes (collectively, the "Class" as used in this Count), provided their personal information to Defendants in connection with employment through Defendants, they entered into implied contracts by which Envision agreed to protect their personal information and timely notify them in the event of a data breach.

86. Defendants invited its business partners, including Plaintiff and the Class, to enter into agreements with Defendants to perform services for them.

87. An implicit part of the offer was that Defendants would safeguard the personal information using reasonable or industry-standard means and would timely notify Plaintiff's and the Class in the event of a data breach.

88. Defendants also implicitly and/or affirmatively represented that they collected and protected the personal information of Plaintiff and the Class using "industry standard means."

89. Based on the implicit understanding and also on Defendants' representations (as described above), Plaintiff and the Class accepted the offers and provided Defendants with their

personal information by permitting Defendants to use their Personal Data in connection with employment through Defendants.

90. Plaintiff and Class members would not have provided their personal information to Defendants had they known that Defendants would not safeguard their personal information as promised or provide timely notice of a data breach.

91. Plaintiff and Class members fully performed their obligations under the implied contracts with Defendants.

92. Defendants breached the implied contracts by failing to safeguard Plaintiff's and Class members' personal information and failing to provide them with timely and accurate notice when their personal information was compromised in the data breach.

93. The losses and damages Plaintiff and Class members sustained (as described above) were the direct and proximate result of Defendants' breach of the implied contract with Plaintiff and Class members.

94. Additionally, since the data breach, Defendants have announced no specific changes to their data security to fix the vulnerabilities in its systems which permitted the intrusions and to prevent further attacks.

95. Accordingly, Defendants still have not satisfied their contractual obligations and legal duties to Plaintiff and the Breach of Implied Contract Class. In fact, now that Defendants' lax approach towards information security has become public, the personal information in Defendants' possession is more vulnerable than previously.

96. Actual harm has arisen in the wake of Defendants' data breach regarding its contractual obligations to provide security measures to Plaintiff and the members of the Breach of Implied Contract Class. Further, Plaintiff and the members of the Breach of Implied

Contract Class are at risk of additional or further harm due to the exposure of their personal information and Defendants' failure to address the security failings that lead to such exposure.

97.  There is no reason to believe that Defendants' security measures are any more adequate than they were before the breach to meet Defendants' contractual obligations and legal duties.

98.  Plaintiff, therefore, also seeks a declaration that Defendants' existing security measures do not comply with their contractual obligations, and that to comply with its implied contractual obligations, Defendants must implement and maintain reasonable security measures, including, but not limited to:

a.  Ordering that Defendants engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendants' systems on a periodic basis, and ordering Defendants to promptly correct any problems or issues detected by such third-party security auditors;

b.  Ordering that Defendants engage third-party security auditors and internal personnel to run automated security monitoring;

c.  Ordering that Defendants audit, test, and train their security personnel regarding any new or modified procedures;

d.  Ordering that Defendants segment customer data by, among other things, creating firewalls and access controls so that if one area of Defendants is compromised, hackers cannot gain access to other portions of Defendants' systems;

e.  Ordering that Defendants purge, delete, and destroy in a reasonably secure manner customer data not necessary for their provisions of services;

f.  Ordering that Defendants conduct regular database scanning and securing checks;

g.  Ordering that Defendants routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

[PROPOSED] SECOND AMENDED CLASS ACTION COMPLAINT JURY TRIAL DEMANDED [JURY TRIAL DEMANDED] - 25

h. Ordering Defendants to meaningfully educate their customers about the threats they face as a result of the loss of their financial and personal information to third parties, as well as the steps Defendants customers must take to protect themselves.

### *Count III – Negligent Misrepresentation*

99. Plaintiff realleges, as if fully set forth, the allegations of the preceding paragraphs.

100. Defendants negligently and recklessly misrepresented material facts pertaining to Plaintiff and Class members' business relationship with Defendants by representing that they would maintain adequate data privacy and security practices and procedures to safeguard Plaintiff and Class Members' Personal Data from unauthorized disclosure, release, data breaches, and theft.

101. Defendants negligently and recklessly misrepresented material facts, pertaining to employment and/or affiliation to Plaintiff and Class Members by representing that they did and would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of Plaintiff and Class Members' Personal Information.

102. Because Defendants knew that their data privacy and security practices were inadequate, they either knew or should have known that their representations were not true.

103. In reliance upon these misrepresentations, Plaintiff and Class Members entered into business relationships with Defendants.

104. Had Plaintiff and Class Members, as reasonable persons, known of Defendants' inadequate data privacy and security practices, or that Defendants were failing to comply with the requirements of federal and state laws pertaining to the privacy and security of Class Members' Personal Information, they would have insisted that Defendants implement more stringent security practices.

[PROPOSED] SECOND AMENDED CLASS ACTION COMPLAINT JURY TRIAL DEMANDED [JURY TRIAL DEMANDED] - 26

105.    Additionally, Defendants misrepresented the scope of the Data Breach in their initial communications to Plaintiff and Class Members.  For example, in its October 10 Letter, Envision referred to a breach of "personal" and "financial information" that "may" have been compromised, without informing Plaintiff that her social security number and name had actually been compromised.  Defendants' motive in not adequately or timely informing Plaintiff and Class Members of the Data Breach was likely to facilitate its acquisition by KKR; it announced, one day after sending the October 10 Letter to Plaintiff, the completion of KKR's acquisition of it.

106.    Had Plaintiff and Class Members, as reasonable persons, been timely informed of the precise type of information compromised in the Data Breach – or that their information had been compromised at all – they would have taken earlier remedial measures to safeguard their privacy and security earlier than they otherwise did.  However, in reliance on these misrepresentations, Plaintiff and Class Members did not take these steps to protect their privacy.

107.    As a direct and proximate consequence of Defendants' negligent misrepresentations, Plaintiff and Class Members have suffered the injuries alleged above.

### *Count IV – Violation of NRS 41.600*

108.    Plaintiff realleges, as if fully set forth, the allegations of the preceding paragraphs.

109.    Plaintiff bring this claim against Defendants operating in Nevada on behalf of the Nevada Class.

110.    In the course of their businesses, Defendants operating in Nevada engaged in deceptive acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts with respect to its employment and/or business affiliation with persons in the

State of Nevada in violation of Nev. Rev. Stat. § 598.0915.  Defendants also violated NRS

598.0923(3) because they violated state laws in connection with goods or services (i.e., the

employment services Plaintiff provided, or the medical services Defendants provided).

Defendants' misrepresentations included but are not limited to the following:

    a.   Defendants misrepresented material facts, pertaining to the storing of Plaintiff's Personal Data, to the Nevada Class by representing that they would maintain adequate data privacy and security practices and procedures to safeguard Nevada Class Members' Personal Data from unauthorized disclosure, release, data breaches, and theft, in violation of Nev. Rev. Stat. § 598.0915(15);

    b.   Defendants misrepresented material facts, pertaining to the storage of the personal data belonging to the Nevada Class by representing by implication that they did and would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of Nevada Class Members' Personal Data, in violation of Nev. Rev. Stat. § 598.0915(15);

    c.   Defendants omitted, suppressed, and concealed the material fact of the inadequacy of the privacy and security protections for Nevada Class Members' Personal Data in violation of Nev. Rev. Stat. § 598.0915(15);

    d.   Defendants engaged in deceptive trade practices with respect to its employment of, and/or business affiliation with, Nevada Class Members' and the Personal Data of those Class Members, in violation of duties imposed by and public policies reflected in applicable federal and state laws, resulting in the Data Breach. These unfair acts and practices violated duties imposed by laws including the 15 U.S.C. § 45, NRS 603A.210;

    e.   Defendants engaged in deceptive trade practices by failing to disclose the Data Breach to Nevada Class Members in a timely and accurate manner in their October communications and thereafter, in violation of NRS 603A.220(1);

    f.   Defendants engaged in deceptive trade practices by failing to take proper action following the Data Breach to enact adequate privacy and security measures and protect Nevada Class Members' Personal Data from further unauthorized disclosure, release, data breaches, and theft.

    g.   Defendants violated NRS 598.0923(3) because their violations of the FTCA, NRS 603A, and NRS 598.0915(15) constituted a violation of a state or federal law.

111.    The above unlawful and deceptive acts and practices and acts by Defendants were immoral, unethical, oppressive, and unscrupulous.  These acts caused substantial injury to consumers that the consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

112.    Defendants knew or should have known that their computer systems and data security practices were inadequate to safeguard Nevada Class Members' Personal Information and that risk of a data breach or theft was highly likely. Defendants' actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the Nevada Class.

113.    As a direct and proximate result of Defendants' deceptive practices, Nevada Class Members suffered injury and/or damages.

114.    Under NRS 41.600, violation of either NRS 598.0915 or NRS 598.0923(3) constitutes actionable "consumer fraud."

115.    Nevada Class Members seek relief under Nev. Rev. Stat. Ann. § 41.600, including, but not limited to, injunctive relief, other equitable relief, actual damages, and attorneys' fees and costs.

116.    Plaintiff, also seeks a declaration that Defendants' existing security measures do not comply with their obligations under the FTCA, NRS 603A, and any other applicable state law.  Plaintiff seeks to enforce this declaratory relief through an affirmative injunction which requires the following:

   a.    Ordering that Defendants engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendants' systems on a periodic basis, and ordering Defendants to promptly correct any problems or issues detected by such third-party security auditors;

b. Ordering that Defendants engage third-party security auditors and internal personnel to run automated security monitoring;

c. Ordering that Defendants audit, test, and train their security personnel regarding any new or modified procedures;

d. Ordering that Defendants segment customer data by, among other things, creating firewalls and access controls so that if one area of Defendants is compromised, hackers cannot gain access to other portions of Defendants' systems;

e. Ordering that Defendants purge, delete, and destroy in a reasonably secure manner customer data not necessary for their provisions of services;

f. Ordering that Defendants conduct regular database scanning and securing checks;

g. Ordering that Defendants routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

h. Ordering Defendants to meaningfully educate their customers about the threats they face as a result of the loss of their financial and personal information to third parties, as well as the steps Defendants customers must take to protect themselves.

## PRAYER FOR RELIEF

117. WHEREFORE, Plaintiff, on behalf of themselves and the Classes described above, seek the following relief:

a. An order certifying this action as a class action under NRCP 23, defining the classes as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiff are proper representatives of the Classes requested herein;

b. A judgment in favor of Plaintiff and the Class awarding them appropriate monetary relief, including actual damages, punitive damages, statutory damages, equitable relief, restitution, disgorgement, attorney's fees, statutory costs, and such other and further relief as is just and proper;

[PROPOSED] SECOND AMENDED CLASS ACTION COMPLAINT JURY TRIAL DEMANDED [JURY TRIAL DEMANDED] - 30

c.  An order providing injunctive and other equitable relief as necessary to protect the interests of the Class as requested herein;

d.  An order requiring Defendants to pay the costs involved in notifying the Class members about the judgment and administering the claims process;

e.  A judgment in favor of Plaintiff and the Classes awarding them pre-judgment and post judgment interest, reasonable attorneys' fees, costs and expenses as allowable by law; and

f.  An award of such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

118.  Plaintiff and Class members demand a jury trial on all counts so triable.

Dated: August 26, 2019

Respectfully Submitted,

/s/ *Miles N. Clark*
Matthew I. Knepper, Esq.
Miles N. Clark, Esq.
KNEPPER & CLARK LLC
5510 S. Fort Apache Rd., Suite 300
Las Vegas, NV 89148-7700
David H. Krieger, Esq.
HAINES & KRIEGER, LLC
8985 S. Eastern Ave., Suite 350
Las Vegas, NV 89123

*Counsel for the Plaintiff and the Class*

[PROPOSED] SECOND AMENDED CLASS ACTION COMPLAINT JURY TRIAL DEMANDED [JURY TRIAL DEMANDED] - 31